IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| 21st CENTURY FINANCIAL SERVICES, INC. | § § § | |
| v. | § § | A-10-CA-803 LY |
| FREDERICK MANDELBAUM, DEAN RENNA, DOUGLAS MANCHESTER, RICHARD GIBBONS, RICHARD FREEMAN, ROBERT BORGMAN, SCOTT ROGERS, JAMES SCHULTZ, STEVEN STRAUSS, ROBERT WILLIAMS, MANCHESTER FINANCIAL BANK a/k/a MANCHESTER FINANCIAL BANK (IN ORGANIZATION) a/k/a MANCHESTER FINANCIAL BANK (PROPOSED) | § § § § § § § § § § § § | |

**ORDERS and REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are: Motion to Dismiss by Defendants Frederick Mandelbaum, Douglas Manchester, Richard Gibbons and Steven Strauss (Clerk's Docket No. 18); Motion to Dismiss by Individual Defendants Robert Borgman, Richard Freeman, and Robert Williams, and Joinder in Motion to Dismiss by Co-Defendants (Clerk's Docket No. 26); Plaintiff's Motion to Extend Time for Service of Process (Clerk's Docket No. 24); Plaintiff's Motion for Leave of Court to File Amended Complaint (Clerk's Docket No. 25); Plaintiff's Opposed Motion for Leave to Take Jurisdictional Discovery (Clerk's Docket No. 39); and the Parties' responsive briefs and notices. The District Court referred the above-motions to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rule 1(d)

of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I. GENERAL BACKGROUND

21st Century Financial Services, LLC ("Plaintiff") is a Texas company which provides computer processing services and related software services to financial institutions. On February 25, 2008, Plaintiff entered into an agreement with "Manchester Financial Bank (proposed)," ("Manchester Bank") a proposed[1] bank located in La Jolla, California. *See* Exhibit A to Plaintiff's First Amended Complaint. The Agreement provided that Plaintiff would provide computer processing and software-related services to Manchester Bank in exchange for certain fees. The Agreement also contained an arbitration clause providing that any unresolved claims, controversies or disputes between the parties would be arbitrated by the American Arbitration Association ("AAA") in Austin Texas. *See* Section 11.2 of the Agreement. The Agreement was signed and executed by Rick Mandelbaum, CEO of Manchester Bank and Patric Jerge, President of Plaintiff.

Plaintiff alleges that Manchester Bank violated the Agreement by failing to pay it for all of its services. In January 2010, Plaintiff initiated an arbitration proceeding in Austin, Texas, but no representatives of Manchester Bank appeared at the arbitration hearing. After the hearing, the Arbitrator ruled that Manchester Bank was in default of the Agreement and ordered it to pay Plaintiff $348,790.35 in contractual damages, $73,246.04 in pre-award interest, $44,274.00 for attorney's fees

---

[1] At the time of the Agreement, the proposed bank was seeking regulatory approval from the Office of the Comptroller of the Currency, Administrator of National Banks ("OCC") and the Federal Deposit Insurance Corporation ("FDIC"). Although the proposed bank received conditional approval from the OCC and FDIC in May and October 2008, it could not raise sufficient capital and did not receive final regulatory approval. The proposed bank was never incorporated and never actually began in the business of banking.

and costs, post-judgment interest at a rate of 10% per annum and $10,760.00 in arbitration fees. *See* Award of Arbitrator dated February 2, 2010, Exhibit B to Plaintiff's First Amended Complaint. Plaintiff alleges that Manchester Bank failed to pay the arbitration award. On September 24, 2010, Plaintiff filed the instant lawsuit in the 419th Judicial District Court of Travis County, Texas, seeking to enforce the arbitration award. *See Plaintiff Fin. Serv., LLC v. Frederick Mandelbaum, Et. Al,* No. D-1-GN-10-003470 (419th Dist. Ct., Travis County, Tex. Feb. 24, 2010). In addition to naming Manchester Bank as a defendant, Plaintiff also named various directors and officers of Manchester Bank, contending that Manchester Bank is a general partnership and that the Individual Defendants are jointly and severally liable to Plaintiff. Defendants deny that Manchester Bank is a general partnership and note that the bank was in the process of filing articles of incorporation at the time of the Agreement.

On October 25, 2010, Defendants removed this case to Federal Court on the basis of diversity pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. The Parties have now filed various motions with the Court including Defendants' Motions to Dismiss under Rule 12(b)(2) for lack of personal jurisdiction, or in the alternative for insufficient process under Rule 12(b)(4) and 12(b)(5), Plaintiff's Motion for Extension of Time to File Service, Plaintiff's Motion to File its Second Amended Complaint and Motion for Jurisdictional Discovery. The Court will first determine whether it has jurisdiction over the individual defendants in this case.

## II. ANALYSIS

**A.     Plaintiff's Opposed Motion for Leave to Take Jurisdictional Discovery**

A little over two months after Defendants filed their Motion to Dismiss, Plaintiff filed a motion for leave to take limited discovery on issues relating to personal jurisdiction. Plaintiff argues

that discovery is needed "to develop evidence of jurisdictional facts surrounding the moving defendants in the event of a contested evidentiary hearing on the motion to dismiss." Plaintiff's Motion at 3. Thus, 21st Plaintiff requests that the Court defer consideration of Defendants' Motion to Dismiss and permit it to conduct discovery.[2]

The district court has broad discretion on whether to permit a party to conduct jurisdictional discovery. *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982). A plaintiff is not entitled to conduct jurisdictional discovery unless he first makes "a preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005).[3] For a plaintiff to make this showing, he must present "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Id.* (*quoting Toys "R" Us, Inc. v. Step Two*, 318 F.3d 446, 456 (3d Cir.

---

[2] On July 19, 2011, the Plaintiff filed a Motion for Leave to Provide Notice of Additional Matters in Support of Plaintiff's Opposed Motion for Leave to Take Jurisdictional Discovery (Clerk's Doc. No. 43). By the motion, Plaintiff notifies the Court of two news articles in which Douglas Manchester is quoted regarding plans of Manchester Texas Financial Group to develop a hotel in Austin. Plaintiff asks that the Court take this information into account in deciding whether to permit jurisdictional discovery. Before Defendants had responded, the court summarily granted the motion—which merely allowed the Plaintiff to make the material known to the Court. A few hours after the granting of the motion, Defendants filed their opposition, arguing that the material was irrelevant given its date, and given the fact that the hotel project had nothing to do with the contract at issue in this case. On August 12, 2011, the Defendants filed a Request for Reconsideration, asking the Court to reconsider the granting of Plaintiff's motion for leave to submit the additional material. Again, the argument is that the material is irrelevant and thus the Court should not have permitted the Plaintiff to submit the news articles.

The Request for Reconsideration (Clerk's Doc. No. 45) is **DENIED.** Whether the material submitted is itself evidence of personal jurisdiction is not the question. Rather, as is discussed in the text, the issue is whether there is enough evidence to suggest that jurisdictional discovery should go forward. Clearly the information in the article is relevant to that sort of analysis, and the Court will permit the Plaintiff to submit the material. The Court has, of course, also considered the Defendants' arguments regarding the articles in ruling on the motion for discovery.

[3] "The party seeking discovery bears the burden of showing its necessity." *Freeman v. U.S.* 556 F.3d 326, 341 (5th Cir.), *cert. denied*, 130 S.Ct. 154 (2009).

4

2003)). In other words, the plaintiff must state what facts he believes discovery would uncover and how those facts would support personal jurisdiction. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir.), *cert. denied*, 531 U.S. 979 (2000). In contrast, "[w]hen the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Wyatt,* 686 F.2d at 284. Accordingly, the Fifth Circuit has approved the denial of jurisdictional discovery where the discovery sought "could not have added any significant facts." *Id*.

Plaintiff has failed to make a preliminary showing of personal jurisdiction in this case. Except with regard to its assertion that "discovery will help determine the context in which defendant Mandelbaum executed a contract in Texas with a Texas entity," Plaintiff's motion contains nothing more than vague or conlcusory assertions of the need for discovery. *See Reese v. Anderson*, 926 F.2d 494, 499 n. 5 (5th Cir. 1991) ("Vague assertions of the need for additional discovery are as unavailing as vague responses on the merits"). Moreover, Plaintiff fails to state how further discovery on Defendant Mandelbaum would produce "a smoking jurisdictional gun." *Marine Geotechnics, LLC. v. Williams*, 2009 WL 2144358 at *5 (S.D. Tex. July 13, 2009). As Defendants point out, the context of Mandelbaum's execution of the Agreement has already been thoroughly laid out in Mandelbaum's six-page declaration and supporting exhibits. The other Individual Defendants have also submitted detailed declarations describing their knowledge of the Agreement and any contacts with Texas. And the recently submitted matters relate to a project that post-dates the Agreement, as well as the arbitration proceeding. Plaintiff has failed to demonstrate how deposing Mandelbaum (or any of the other individuals) would provide Plaintiff with evidence that would support personal jurisdiction in this case. *See Mohamed v. Erinys Int'l Ltd.,* 2010 WL 3359518 at * 4 (S.D. Tex. Aug. 23, 2010) (denying request for additional discovery where plaintiffs offered no

basis in support of inference that deposition testimony would contradict sworn declarations); *Marine*, 2009 WL 2144358 at *5 (denying plaintiff's request for jurisdictional discovery where evidence in the record already detailed contacts with the forum and thus story was "fully told"). Based upon the foregoing, Plaintiff's Motion for Leave to Take Jurisdictional Discovery (# 39) is **HEREBY DENIED**.[4]

**B.    The Individual Defendants' Motions to Dismiss**

The Individual Defendants—all non-residents of Texas—argue that they do not have sufficient general or specific contacts with Texas to justify a finding of personal jurisdiction over them. The Individual Defendants claim that they were not parties to the Agreement at issue. While the Individual Defendants acknowledge that Frederick Mandelbaum signed and negotiated the Agreement, they claim that "he did so only in his capacity as proposed President and CEO of Manchester Financial Bank (proposed)." Defendants' Motion at p. 4.

1.    Standard for Personal Jurisdiction

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the state long-arm statute permits an exercise of jurisdiction over that defendant, and (2) an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009), *cert. denied,* 131 S.Ct. 68 (2010); *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003), *cert. denied*, 540 U.S. 1111 (2004). Because the requirements of Texas's long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether the district court's exercise of personal jurisdiction over the defendants would be consistent with due process. *Id.*

---

[4]The Court denies Defendants' request to impose sanctions on Plaintiff for filing the motion.

The Supreme Court has articulated a two-part test to determine whether a federal court sitting in diversity may properly exercise personal jurisdiction over a nonresident defendant: (1) the nonresident must have sufficient "minimum contacts" with the forum state, and (2) subjecting the nonresident to jurisdiction in the forum state must not offend traditional notions of "fair play and substantial justice." *McFadin*, 587 F.3d at 759 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant's "minimum contacts" may give rise to either *specific* or *general* personal jurisdiction, depending on the nature of the suit and defendant's relationship to the forum state. *Jackson v. Tanfoglio Giuseppe, S.R.L.,* 615 F.3d 579, 584 (5th Cir. 2010). "Where a defendant 'has continuous and systematic general business contacts' with the forum state, the court may exercise general jurisdiction over any action brought against the defendant. Where contacts are less pervasive, the court may still exercise 'specific' jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'" *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)).

When a district court does not conduct an evidentiary hearing, as here, the party seeking to assert personal jurisdiction is required only to present sufficient facts to make out a *prima facie* case that a defendant has sufficient minimum contacts with the forum state to justify that state's exercise of personal jurisdiction over the defendant. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000). The Court will accept as true any uncontroverted allegations contained in the party's complaint and will resolve all factual conflicts arising out of the parties' affidavits in favor of the party seeking jurisdiction. *Id.* However, the Court need not accept "merely conclusory" allegations as true. *Central Freight Lines, Inc. v. APA Transp. Corp*., 322 F.3d 376, 380 (5th Cir. 2003).

2. <u>Does the Court have general jurisdiction over the Individual Defendants?</u>

As noted above, general jurisdiction may be found when the defendant's contacts with the forum state are substantial, continuous, and systematic. *Jackson*, 615 F.3d at 584. "The continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Id.* "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction." *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citations omitted).[5] "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Id.* at 610. It is not enough for a defendant merely to do business *with* Texas; rather, a defendant must a have a business presence *in* Texas. *Id.* "[G]eneral jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 217 (5th Cir. 2000) (citations omitted). However, "vague and overgeneralized assertions that give no indication as to

---

[5]In *Johnston*, the Fifth Circuit reviewed several of its previous cases to illustrate just how difficult it is to establish general jurisdiction. *See, e.g., Cent. Freight*, 322 F.3d at 381(finding no general jurisdiction even though the defendant routinely arranged and received interline shipments to and from Texas and regularly sent sales people to Texas to develop business, negotiate contracts, and service national accounts); *Wilson v. Belin*, 20 F.3d 644, 651 (5th Cir.) ("Even if [the defendant's] contacts with Texas via his short-lived malpractice insurance arrangement through a Texas law firm and his multi-year pro bono association with the historical society were arguably continuous, we hold that they were not substantial enough to warrant the imposition of general personal jurisdiction over [him]."), *cert. denied*, 513 U.S. 930 (1994); *Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784, 787 (5th Cir. 1990) (holding that sporadic contacts with Louisiana were insufficient to cause the defendant to reasonably anticipate the possibility of being haled into court in Louisiana); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 373-76 (5th Cir. 1987) (holding that the sale of over $250 million of products to seventeen Texas customers over a five year period did not constitute systematic and continuous contacts with Texas because delivery was accepted in Kansas).

the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 610.

While Plaintiff concedes that the Court does not have general jurisdiction over the majority of the Defendants, it nevertheless contends that the Court has general jurisdiction over Defendants Steven Strauss and Douglas Manchester.[6] Plaintiff argues that the Court has general jurisdiction over Douglas Manchester because (1) he is a corporate officer of a Texas company, and (2) he has traveled to Texas on one or more occasions. These are not sufficient contacts to give rise to general jurisdiction. First, merely traveling to a forum state, "even at regular intervals" does not create general jurisdiction. *See Johnston*, 523 F.3d at 614. In addition, the fact that Manchester is a corporate officer in his son's five month-old limited liability company – Manchester Texas Financial Group – does not show that he has had substantial, continuous, and systematic contacts with Texas. *See Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 779 (5th Cir. 1986) (stating that an individual's status as a director of a Texas corporation would not alone be sufficient to create general jurisdiction in Texas), *cert. denied,* 481 U.S. 1015 (1987). Moreover, under the fiduciary-shield doctrine, it is well-established that "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation." *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). *See also, Guillory v. JK Harris & Co.*, 2007 WL 7239890 at * 4 (S.D. Tex. 2007) (holding that court did not have general jurisdiction over defendant where only connection to Texas was that defendant was an officer of corporations that did business in Texas). Thus, the fact that his son's company has a

---

[6]*See* Plaintiffs' Response to Defendants Mandelbaum, Manchester, Gibbons and Strauss (No. 23) at p. 2.

presence in Texas does not create jurisdiction over Manchester individually. There is no evidence before the Court that Manchester has ever had a registered place of business in Texas, owned, possessed or used property in Texas, or maintained a mailing address or bank account in Texas. Based upon the foregoing, Plaintiff has failed to demonstrate that the Court has general jurisdiction over Defendant Manchester.

With regard to Steven Strauss—an organizer and director of Manchester Bank—Plaintiff argues that the Court has general jurisdiction over him because Strauss "practiced law in Texas" by submitting a letter[7] to the arbitrator in the underlying Arbitration of this case, which took place in Austin, Texas. Plaintiff's arguments with regard to Defendant Strauss are misplaced. As already discussed, "the general jurisdictional inquiry focuses exclusively on whether the nonresident defendant's contacts with the forum *unrelated to the cause of action* are sufficiently "continuous and systemic" to satisfy due process requirements. *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 345 (5th Cir. 2004) (emphasis added). Plaintiff's reference to Strauss' letter to the arbitrator is not unrelated to this cause of action, but rather is directly related to the claims and issues involved in this lawsuit and, therefore, is irrelevant to whether this Court has general personal jurisdiction over Strauss. *See Helicopteros Nacionales*, 466 U.S. 408 at 415-16. Plaintiff points to nothing else which would support the general jurisdiction of this Court over Strauss. Like Manchester, Strauss has never had a place of business in Texas, has never owned or leased any property here, and has never maintained a bank account in Texas. The Court further finds that submitting a letter to an arbitrator is insufficient to show that Strauss "practiced law" in Texas. *See Wilson*, 20 F.3d at 650-51 (fact that defendant performed one legal project per year in Texas for three

---

[7]See Exhibit 5 to Plaintiff's Response (Clerk's Docket No. 23).

years was insufficient to show general jurisdiction). Accordingly, Plaintiff has failed to demonstrate that this Court has general jurisdiction over Defendant Strauss.

       3.    <u>Does the Court have specific jurisdiction over the Individual Defendants?</u>

The Fifth Circuit has articulated a three-step analysis for specific jurisdiction: (1) whether the defendant has "minimum contacts" with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *McFadin*, 587 F.3d at 759.

Under the first prong of the test, Plaintiff must demonstrate that the Individual Defendants have had sufficient minium contacts with Texas. As the Fifth Circuit has explained, this inquiry is "fact intensive" and no one element is decisive. *McFadin*, 587 F.3d at 759. "[T]he touchstone is whether the defendant's conduct shows that it reasonably anticipates being haled into court." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "The defendant must not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Id.* (internal citations omitted).

Plaintiff argues that the Individual Defendants'[8] "minimum contacts" with Texas include: negotiating the Agreement with Plaintiff, a Texas company, on behalf of Manchester Bank; directing Mandelbaum to sign and execute the Agreement with a Texas company; and recognizing that the Agreement called for arbitration in Texas. Therefore, Plaintiff argues that the Individual Defendants

---

[8] Although Plaintiff refers to the Individual Defendants collectively, it appears that only Mandelbaum and Manchester had any direct communications with Plaintiff or actually participated in the contract negotiations.

11

had notice that they could be "haled into Texas court." Plaintiff's Response at p. 10. The Court disagrees.

While a single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted, "merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). Thus, merely entering into a contract with a resident of the forum state will not support the exercise of personal jurisdiction over a nonresident defendant. Similarly, engaging in communications with a resident of the forum state during the course of performing a contract is insufficient to subject a nonresident to the court's jurisdiction. *XPEL Tech. Corp. v. Maryland Performance Works LTD*, 2006 WL 1851703 at * 5 (W.D. Tex. May 19, 2006). See also, *Moncrief*, 481 F.3d at 312 ("An exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law."); *McFadin*, 587 F.3d at 760 ("We have held that communications relating to the performance of a contract themselves are insufficient to establish minimum contacts."); *Crandell v. Arthurs,* 2007 WL 173865 at * 4 (E.D. Tex. Jan. 19, 2007) (holding that communications between defendants and plaintiff that led to the contract did not support an exercise of specific jurisdiction over defendants). "Jurisdiction must not be based on the fortuity of one party residing in the forum state." *McFadin,* 753 F.3d at 760. Thus, despite the fact that the Individual Defendants may have communicated and negotiated with a Texas resident and ultimately executed the Agreement with the resident, this is insufficient by itself to satisfy the minimum contacts inquiry. *See Stuart*, 772 F.2d at 1194 (holding that "[t]he random use of interstate commerce to negotiate and close a particular contract, the isolated shipment of goods to the forum at the instigation of the

resident plaintiffs, and the mailing of payments to the forum do not constitute the minimum contacts necessary to constitutionally exercise jurisdiction over [defendant]."); *XPEL Tech.,* 2006 WL 1851703 at * 5 ("Nor does the combination of executing a contract in the forum state and engaging in communications with a resident during the course of performance satisfy the minimum contacts inquiry"). Accordingly, the Individual Defendants did not purposefully avail themselves of the benefits and protections of Texas laws by simply negotiating and executing the Agreement with a Texas resident.

It is important to note that the Individual Defendants in this case were not *parties* to the Agreement between Plaintiff and Manchester Bank. Thus, they are not bound by the Arbitration Clause. "If a person signs a contract in her corporate capacity, she is not individually a party to the contract." *Wolf v. Summers–Wood, L.P.*, 214 S.W.3d 783, 792 (Tex. App.– Dallas 2007, no pet.). *See also, Mort Keshin & Co., Inc. v. Houston Chronicle Pub. Co.*, 992 S.W.2d 642, 647 (Tex. App.-Houston [14th Dist.] 1999, no pet.) ("When an agent negotiates a contract for its principal in Texas, it is the principal who does business in this state, not the agent."); *Hotel Partners v. Craig*, 993 S.W.2d 116, 121 (Tex. App.– Dallas 1994, pet. denied) ("When an agent arrives in Texas to represent his principal, only the principal is doing business in Texas."). Accordingly, the Court cannot impute Manchester Bank's contact with Texas to the Individual Defendants in the case. "[T]he general rule in the Fifth Circuit is that jurisdiction over the individual cannot be predicated on jurisdiction over a corporation." *Govea v. Gulf Coast Marine & Assoc., Inc.,* 2010 WL 4737780 at * 4 (E.D. Tex. Nov. 16, 2010). Under the fiduciary shield doctrine, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation." *Stuart*, 772 F.2d

at 1197. The fiduciary shield doctrine is based on "the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Saktides v. Cooper*, 742 F. Supp. 382, 385 (W.D. Tex. 1990) (*quoting Marine Midland Bank v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981)). Of course, the doctrine does not protect a corporate officer from specific personal jurisdiction as to intentional torts or fraudulent acts for which he may be held individually liable, or if the corporation is the "alter ego" of the officer. *Pension Advisory Group, LTD v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 693 (S.D. Tex. 2011). These exceptions are not applicable in the instant case.

There appears to be a disagreement between some courts in Texas (both federal and state) on whether the fiduciary shield doctrine should be applied to the exercise of *general* jurisdiction only, and not to *specific* jurisdiction.[9] *See Malibu Consulting Corp. v. Funair Corp.*, 2007 WL 4333869 at * 5-6 (W.D. Tex. Dec. 7, 2007) (recognizing the disagreement between courts regarding

---

[9]*Compare Pension*, 771 F. Supp.2d at 694 (finding that the doctrine only applies to the exercise of *general* jurisdiction)*, Timberlake v. Synthes Spine Co.*, 2008 WL 2770588 at * 5 (S.D. Tex. July 11, 2008) (same), *XPEL Tech.*, 2006 WL 1851703 at * 10 (same), *Wolf* , 214 S.W.3d at 790 (same), *Barnhill v. Automated Shrimp Corp.*, 222 S.W.3d 756, 768 (Tex. App.– Waco 2007, no pet.) (same) *with, Breckenridge Enterprises, Inc. v. Avio Alternatives, LLC,* 2009 WL 1469808 (N.D. Tex. May 27, 2009) (applying the doctrine to the exercise of *specific* jurisdiction), *Organic Metals, Inc. v. Aquasium Tech., Ltd.*, 2004 WL 718960 (N.D. Tex. April 2, 2004) (citing a "survey of cases" in the Northern District which have found that the doctrine often applies in cases where specific jurisdiction would be the only basis for exercising personal jurisdiction), *Sadd v. PS II, Inc.*, 2000 WL 33348735 at * 6 (W.D. Tex. March 31, 2000) (applying doctrine to the specific jurisdiction inquiry). Notably, the common factor in those cases listed above which held that the doctrine is not applicable to the exercise of specific jurisdiction is that the individual defendants were being sued for their own tortuous individual conduct, rather than merely their actions which were made on behalf of their employer, such as signing a contract on behalf of their employer. This is consistent with the very purpose of the doctrine and the well-known exception to the doctrine, *i.e.*, that it "does not protect a corporate officer from specific personal jurisdiction as to intentional torts or fraudulent acts for which he may be held individually liable." *Pension*, 2011 WL 649350 at * 6.

the application of fiduciary shield doctrine).  However, the Fifth Circuit has implied that the doctrine is indeed applicable to the specific jurisdiction inquiry.  *See General Retail Sers., Inc. v. Wireless Toyz Franchise, LLC.*, 2007 WL 2909565 at * 795 ("So while the fiduciary-shield doctrine could prohibit this court from ascribing acts of the Wireless Toyz to Simtob, it does not prohibit Simtob from being held personally liable for his own tortuous conduct simply because he is an officer of a corporation").  Accordingly, the Court finds that the fiduciary shield doctrine is applicable to the instant specific jurisdiction inquiry.

Because the Individual Defendants' were merely acting in their corporate capacities on behalf of Manchester Bank in their dealings with Plaintiff, the fiduciary shield doctrine prevents the Court from exercising specific jurisdiction over them.[10]  For example, although Defendant Mandelbaum signed and executed the Agreement,[11] he did so in his capacity as President and CEO of Manchester

---

[10] Even if Manchester Bank is a general partnership and not a corporation, as Plaintiff alleges, the Court would still not have jurisdiction over the Individual Defendants.  "Courts have rejected asserting personal jurisdiction over defendants who retain some sort of joint liability, such as a partnership or joint tort-feasor liability, where some independent minimum contacts apart from the joint liability are not shown." *Steadfast Ins. Co. v. Pop Restaurants*, 2010 WL 3155923 at * 8 (S.D. Tex. Aug. 10, 2010).  Moreover, "[l]iability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990).  Regardless of any alleged joint liability, "jurisdiction over each defendant must be established individually." *Id.*  Thus, where two defendants may both be liable for a claim, "a court nevertheless may not impute jurisdictional contacts from one to the other." *Steadfast*, 2010 WL 3155923 at * 7 (holding that court did not have specific jurisdiction over defendants where plaintiff failed to show minimum contacts with forum independent of defendants' alleged joint and several liability). *See also*, *Salem Radio Rep., Inc. v. Can Tel Market Support Group*, 114 F. Supp.2d 553, 557 (N.D. Tex. 2000) ("this Court refuses to hold that the minimum contacts of a partnership should be imputed to partners with no individual contacts").  In addition, partnerships and other unincorporated associations are treated as corporations for venue purposes. *See Grav v. Tastemaker*, 907 F. Supp. 1473, 1474 (D. Colo. 1995).

[11] Mandelbaum apparently never traveled to Texas to negotiate the Agreement and ultimately signed the Agreement in California.

Bank, not in his individual capacity. Courts have rejected the exercise of personal jurisdiction over the signatory on a contract who was acting in a representative capacity for a corporation. *See Pension*, 2011 WL 649350 at * 6 (declining to exercise personal jurisdiction over defendant where he signed the contract in his representative capacity on behalf of the corporation); *Cerbone v. Farb*, 225 S.W.3d 764, 771 (Tex. App.– Houston [14th Dist.] 2007, no pet.) (holding that defendant did not purposefully avail himself of Texas jurisdiction by signing a promissory note in his corporate capacity on behalf his company). "As one court has explained, because a 'person [who] signs a contract in her corporate capacity . . . is not individually a party to the contract,' a court lacks specific jurisdiction over a signatory with respect to a breach of contract claim." *Pension*, 2011 WL 649350 at * 6 (citing *Wolf*, 214 S.W.3d at 792). Moreover, any communications between the Individual Defendants and Plaintiff regarding the Agreement were made in their capacities as officers of Manchester Bank, not in their individual capacities. *See Crandell,* 2007 WL 173865 at * 4 (finding that fiduciary shield doctrine would protect individual defendants from personal jurisdiction since any communications regarding the contract were made in the defendant's capacities as officers of the company). Accordingly, the fiduciary shield doctrine protects the Individual Defendants from the Court's exercise of personal jurisdiction over them in this case. Because 21st Century has not satisfied the minimum contacts prong of the analysis, the Court need not address whether the exercise of jurisdiction over the Individual Defendants would offend traditional notions of fair play and substantial justice.

Based upon the foregoing, the Court does not have personal jurisdiction over the Individual Defendants in the instant case. Accordingly, the Court recommends that the Defendants' Motions to Dismiss (Clerk's Docket Nos. 18 & 26) should be granted.

**C.  Plaintiff's Motion for Extension of Time for Service of Process**

Plaintiff moves the Court pursuant to Federal Rule of Civil Procedure 4(m) to extend the time for service on all of the Defendants in this case.[12] Plaintiff argues that it was notified by Defendants' Gibbons, Manchester, Mandelbaum and Strauss' Motion to Dismiss "for the first time that Defendants Mandelbaum and Manchester Financial did not receive a copy of the Original Petition and citation and now seeks to Extend Time for Service of process to correct issue as to Defendants Mandelbaum and Manchester Financial."  Motion at 2-3.  Plaintiff also seeks additional time for service of process as to Individual Defendants Renna, Borgman, Freeman, Schultz and Williams. Rule 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court-on motion or on its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

FED. R. CIV. P. 4(m).  Courts must extend the time for service of process under Rule 4(m) if a plaintiff shows good cause for its failure to serve the defendant within the requisite period of time. *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996) ("If good cause is present, the district court must extend time for service.").  Absent a showing of good cause, the Court is within its discretion to either dismiss the action without prejudice or extend the time to serve for an appropriate period. *Id.* ("If good cause does not exist, the court may, in its discretion, decide whether to dismiss the case

---

[12]In its Reply Brief, Plaintiff states that it "agrees that if this Court grants Defendants' Motion to Dismiss. . .for lack of personal jurisdiction, then all other motions in this case before the Court would be moot." However, Defendants' Motions to Dismiss were filed by the Individual Defendants in this case, not Manchester Financial Bank. Thus, Plaintiff's Motion to Extend Time for Service of Process is not moot with regard to Manchester Financial Bank. Of course, Plaintiff may choose to voluntarily dismiss the only remaining defendant in this case and re-file this lawsuit in California.

without prejudice or extend time for service."). An extension of time may be warranted, "for example, if the applicable statute of limitations would bar the re-filed action, or if the defendant is evading service or conceals a defect in attempted service." FED. R. CIV. P. 4(m) advisory committee's note (1993).

"To establish good cause, a plaintiff has the burden of demonstrating 'at least as much as would be required to show excusable neglect . . . .'" *Newby v. Enron Corp.*, 284 Fed. Appx. 146, 149 (5th Cir. 2008) (quoting *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985)). The Court focuses on the actions of the plaintiff that took place within the requisite period to serve the defendant. *See Winters*, 776 F.2d at 1305-06 ("It would appear to be generally irrelevant that the defendant not served within the 120-day period later finds out about the suit or is in fact later served, so long as there was not good cause for the failure to serve within the 120 days").

The Court has already determined that it does not have personal jurisdiction over the Individual Defendants in this case. Therefore, service would be futile on those defendants. *See Miller v. United States*, 2011 WL 1750442 * 9 (N.D. Fla. Mar. 29, 2011) (finding that extending time for service of process under Rule 4(m) would be futile since court lacked personal jurisdiction over defendant); *Rhodes v. J.P. Sauer & Sohn, Inc.,* 98 F. Supp.2d 746, 750 (W.D. La. 2000) (noting that proper service would be futile where court did not have personal jurisdiction over defendant). Accordingly, Plaintiff's request to extend time for service of process on the Individual Defendants should be denied. However, the Court finds that Plaintiff has made a good faith effort to serve Manchester Financial Bank at what it believed to be its correct place of business in National City, California. *See Id.* Accordingly, Plaintiff's Motion to Extend Time for Service of Process is **GRANTED IN PART** and **DENIED IN PART** (Clerk's Docket No. 24). The Court **DENIES** the

Motion to Extend Time with regard to the Individual Defendants in this case, but **GRANTS** the Motion as to Manchester Financial Bank. Thus, Plaintiff will be granted a **30-day period** (calculated from the date of this Report and Recommendation) to effectuate service on Manchester Financial Bank.

**D.    Plaintiff's Motion for Leave of Court to File Amended Complaint**

Because the Court is recommending that the Individual Defendants be dismissed from this lawsuit, the Court finds that Plaintiff's Motion for Leave to file an Amended Complaint (Clerk's Docket No. 25) is now moot, and is therefore be **DENIED AS MOOT**. However, if the Plaintiff desires to pursue any additional claims against Defendant Manchester Financial Bank, then Plaintiff should file a new motion for leave to file an amended complaint.

## III.  RECOMMENDATION

Based upon the foregoing, the Court **RECOMMENDS** that the District Court **GRANT** the Motions to Dismiss by the Individual Defendants (Clerk's Docket Nos. 18 and 26) and **DISMISS WITHOUT PREJUDICE** Frederick Mandelbaum, Douglas Manchester, Richard Gibbons, Steven Strauss, Robert Borgman, Richard Freeman, and Robert Williams from this lawsuit.

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report

shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C) (2006); *Thomas v. Arn*, 474 U.S. 140, 150–153 (1985); *Lisson v. O'Hare*, 326 F. App'x 259, 260 (5th Cir. 2009).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 30th day of August, 2011.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE